IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BTL INDUSTRIES, INC. § | | |
| § | | |
| *Plaintiff*, § | | |
| § | | |
| v. § | | |
| § | Civil Action No. 23-359-WCB | |
| ADVANCED REGENERATIVE § | | |
| MEDICINE LLC d/b/a JUVAWAVE, § | | |
| ADVANCED REGENERATIVE § | | |
| MEDICINE USA LLC d/b/a § | | |
| JUVAWAVE, and JAMES VAUGHN, § | | |
| § | | |
| *Defendants*. | | |

**MEMORANDUM OPINION AND ORDER**

This action was brought by plaintiff BTL Industries, Inc. ("BTL") against defendants Advanced Regenerative Medicine LLC ("ARM"), doing business as Juvawave; Advanced Regenerative Medicine USA LLC ("ARM USA"), also doing business as Juvawave); and James Vaughn. Following service on the two corporate defendants, neither appeared nor responded to the complaint. The court directed the clerk to enter a default pursuant to Rule 55(a) of the Federal Rules of Civil Procedure. Dkt. No. 18. The clerk entered a default against those two defendants on July 14, 2023. Dkt. No. 20. Service was subsequently effected on Mr. Vaughn, who also failed to appear or respond to the complaint. On August 21, 2023, the court directed the clerk to enter a default against Mr. Vaughn, Dkt. No. 28, and a default was entered on that date. Dkt. No. 29. BTL later voluntarily dismissed the action against ARM. Dkt. No. 30. That action left only Mr. Vaughn and ARM USA as defendants in the action.

On December 7, 2023, pursuant to Rule 55(b) of the Federal Rules of Civil Procedure, BTL moved for entry of a default judgment against ARM USA and Mr. Vaughn and for entry of a

1

permanent injunction against those two remaining defendants. As part of its motion, BTL requested an order awarding BTL damages against ARM USA and Mr. Vaughn in the amount of $201,230 for patent infringement; awarding BTL damages against ARM USA and Mr. Vaughn in the amount of $603,690 under the Lanham Act; and finding that Mr. Vaughn's conduct on behalf of ARM USA constituted willful and malicious action. With respect to the motion for an injunction, BTL sought an order permanently enjoining ARM USA and Mr. Vaughn from further infringement of BTL's patents and trademarks. Dkt. No. 36.

BTL's motion is granted in part. A default judgment will be entered against ARM USA and Mr. Vaughn. As part of that judgment, a permanent injunction will be granted against ARM USA and Mr. Vaughn prohibiting them from using BTL's trademarks and certain confusingly similar marks in commerce. The injunction will also require that the defendants promptly remove from the website www.juvawave.com all uses of BTL's trademarks and confusingly similar marks. However, BTL will not be awarded a permanent injunction on its patent infringement claim because BTL has failed to demonstrate irreparable injury from the defendants' asserted infringement. In addition, BTL is not entitled to an award of monetary damages, because BTL's proof of damages is inadequate to support the requested award. BTL's request that the court make a finding that Mr. Vaughn's behavior has been "malicious and willful" is denied, because such a finding does not bear on any pending legal issue in this case.

## BACKGROUND

The background facts set forth below are taken from the complaint and attachments to the complaint, Dkt. No. 1; a declaration by BTL's Director of Operations, Mr. Jason Wooden, Dkt. No. 38; and declarations with attachments from two of BTL's attorneys, Josephine Kim and Samantha Wilson, Dkt. Nos. 39 and 40.

BTL, which is involved in what it refers to as the "aesthetics industry," markets body-contouring devices that healthcare professionals use to provide non-invasive body-contouring treatments. The technology, which is embodied in BTL's EMSCULPT and EMSCULPT NEO devices, entails the use of radiofrequency and electromagnetic energy to induce muscle contractions that result in what BTL characterizes as "contour[ing] an individual's physique." BTL's EMSCULPT and EMSCULT NEO devices are protected by four patents owned by BTL, U.S. Patent Nos. 11,266,852; 10,695,575; 10,478,634; and 9,636,519, which are directed to devices and methods that employ body-contouring technology. BTL is also the exclusive licensee of several trademarks associated with the EMSCULPT and EMSCULPT NEO devices, including the federally registered EMSCULPT®, EMSCULPT NEO®, EM®, and HIFEM® trademarks. BTL asserts that BTL has expended significant time and resources in promoting and selling its EMSCULPT and EMSCULPT NEO products under the trademarks licensed by BTL.

In its motion, BTL sets forth evidence that since at least September 6, 2022, the website www.juvawave.com, which is associated with ARM USA and Mr. Vaughn, has been selling what BTL refers to as "knockoff versions of BTL's EMSCULPT and EMSCULPT NEO devices." Dkt. No. 37 at 5; *see* Dkt. No. 1 at ¶ 39; Dkt. No. 39 at ¶ 3. The website, BTL asserts, uses BTL's trademarks and confusingly similar variations of those trademarks to market the "knockoff" versions of BTL's products. The Juvawave website has offered three devices that BTL accuses of infringing BTL's patents: the EMSHAPE, the EMSMART, and the EMSLIM machines. At the time the complaint was filed, Juvawave advertised those devices at selling prices ranging from $14,500 to $95,000.

BTL asserts that ARM USA and Mr. Vaughn are responsible for the Juvawave brand and that Mr. Vaughn, who is the registered agent for ARM USA, advertises Juvawave's products,

including the infringing devices, on his personal email, jvaughn72@gmail.com. According to BTL, Juvawave uses the HIFEM and EMSCULPT trademarks as well as and confusingly similar variations of those marks, including EMSHAPE, EMSMART, EMSLIM, EMSTRENGTH, and HIFM, on its website and elsewhere to promote Juvawave's products.

On February 23, 2023, BTL sent Juvawave a cease-and-desist letter demanding that Juvawave cease advertising devices that infringed BTL's patents and cease using BTL's trademarks and confusingly similar marks to do so. A reply email sent the same day responded in a manner indicting that Juvawave did not intend to stop its infringing conduct. *See* Dkt. 1-1 at 30. According to BTL, Mr. Vaughn has continued to use his personal email and the Juvawave website to advertise Juvawave's infringing products to potential customers and has continued to use BTL's trademarks in doing so.

## DISCUSSION

BTL seeks entry of a default judgment against ARM USA and Mr. Vaughn. For relief, BTL asks the court to enter (1) an injunction against ARM USA and Mr. Vaughn, (2) an award of money damages as compensation for Juvawave's patent infringement and because of Juvawave's willful violations of BTL's trademark rights under the Lanham Act, and (3) a finding that Mr. Vaugh's conduct is willful and malicious.

BTL is plainly entitled to a default judgment. Each of the defendants was validly served, but none has entered an appearance or responded to the complaint. Nor did any of the defendants respond to BTL's motion for the entry of default, which was entered against the two corporate defendants on July 14, 2023, and against Mr. Vaughn on August 21, 2023.

BTL filed the present motion for a default judgment against ARM USA and Mr. Vaughn on December 7, 2023. Dkt. No. 36. In the ensuing two months, there has been no response to that

motion from ARM USA or Mr. Vaughn, nor have any of the defendants even entered an appearance in this case. It is thus apparent to the court that the defendants have chosen to ignore this lawsuit. While BTL's right to a default judgment is clear, the question of what remedy or remedies they are entitled to is more complex, as discussed below.

### A. Default Judgment

The Third Circuit has held that a default judgment should be granted if the plaintiff can satisfy each of three factors: (1) that failure to enter a default judgment would result in prejudice to the plaintiff; (2) that the defendant has no apparent litigable defense; and (3) that the failure to appear and defend is the result of culpable conduct by the defendant. *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000). Importantly, in determining whether those factors have been met, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *PPG Indus. Inc. v. Jiangsu Tie Mao Glass Co.*, 47 F.4th 156, 161 (3d Cir. 2022) (quoting *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990)).

In light of the evidence proffered by BTL, those three factors are satisfied in this case. While BTL has not offered any evidence regarding how many infringing devices ARM USA and Mr. Vaughn have sold (or whether they have sold any at all), the evidence is clear that the defendants have at least *offered* to sell those devices. Because BTL's allegations that the defendants' devices infringe BTL's patents and that the defendants have offered those devices for sale in the United States must be taken as true, BTL has established that the defendants have violated BTL's patent rights.

Based on BTL's allegations, it also appears that the defendants have violated BTL's rights against trademark infringement under the Lanham Act. The defendants' use of BTL's actual

5

marks, as alleged by BTL, is particularly strong evidence that the defendants' conduct will lead to a likelihood of confusion on the part of the public.

Those respective invasions of BTL's rights constitute a form of prejudice that is sufficient to support the first factor bearing on whether to issue a default judgment. Moreover, in light of the defendants' knowing failure to participate in the litigation, BTL "cannot proceed further against [the defaulting defendants] other than by seeking a default judgment." *Skeway v. China Natural Gas, Inc.*, No. 10-728, 2015 WL 451435, at *1 (D. Del. Jan. 30, 2015). For that reason, denial of a default judgment would prejudice BTL by precluding "any effective avenue for obtaining relief." *Van Roy v. Sakhr Software Co. (K.S.C.C.)*, No. 11-863, 2015 WL 4608132, at *2 (D. Del. July 31, 2015); *see also Eden Foods, Inc. v. George*, No. 22-409, 2023 WL 2926592, at *4 (D. Del. Apr. 13, 2023); *Turner v. Corr. Med. Servs., Inc.*, 262 F.R.D. 405, 407 (D. Del. 2009) (plaintiff's "ability to pursue [its] claim[s] has been hindered.").

Second, again based on the allegations in the complaint and the evidence that BTL has presented accompanying its motion, the defendants have no apparent litigable defenses. Rather than contend that his company did not infringe BTL's patents, an unsigned email from the defendants' email address responded to BTL's cease-and-desist letter by informing BTL, in effect, that the defendants had no intention of respecting those patent rights. *See* Dkt. No. 1-1 at 30 ("BTL doesn't own the patent on electromagnetic science. God does. Send your cease and desist to HIM. You're just threatened because we're taking your business and will take a lot more now that we educated doctors and other businesses that they can get a better machine without paying exorbitant prices."). With respect to the trademark infringement allegations, the defendants' use of BTL's actual marks and very similar marks in advertising their products, as shown by the attachments to

6

the complaint and Ms. Kim's declaration, leaves little doubt as to the strength of BTL's allegations of Lanham Act violations.

Third, both ARM USA and Mr. Vaughn were properly served with the complaint, and their failure to appear and defend appears to be the product not of unawareness, but of culpable defiance of BTL's efforts to protect its rights through legal means. *See J & J Sports Prod., Inc. v. M&I Hospitality of Del Inc.*, No. 15-353, 2018 WL 6040254, at *2 (D. Del. Nov. 19, 2018) (quoting *Skeway*, 2015 WL 451435, at *1) ("[W]here M&I has failed to respond to the Complaint, it can be inferred that the 'delay is due to culpable conduct.'"). The inference of culpable conduct is further supported by Mr. Vaughn's defiant response to BTL's appropriate measures taken to bring his company's infringing activity to a halt.

A default judgment is therefore clearly in order. Not to grant a default judgment in circumstances such as this would lead to the intolerable conclusion that a defendant could flagrantly disregard a lawful summons served by a party with a sound legal claim and would face no legal consequences for doing so. For those reasons, even though default judgments are generally disfavored, a default judgment will be entered in this case against the defendants on BTL's claims for patent infringement, trademark infringement under the Lanham Act, the Delaware Deceptive Trade Practices Act ("DDTPA"), and Delaware common law.[1] The more difficult question is what form or forms of relief should be granted as part of the judgment.

---

[1] Courts applying the DDTPA and Delaware's common law of trademark infringement have applied the same standards as applied to trademark infringement under the Lanham Act. *See Diamond State Door, LLC v. Diamond State Pole Buildings, LLC*, No. 21-1258, 2023 WL 3625000, at *2 (D. Del. May 24, 2023); *Eden Foods*, 2023 WL 2926592, at * 3; *Treasury Mgmt. Servs., Inc. v. Wall St. Sys. Del., Inc.*, No. 16-283, 2017 WL 1821114, at *5 (D. Del. May 5, 2017); *Mil. Certified Residential Specialist, LLC v. Fairway Indep. Mort. Corp.*, 251 F. Supp. 3d 750, 757–58 (D. Del. 2017); *Schering-Plough Healthcare Prods., Inc. v. Neutrogena Corp.*, 702 F. Supp. 2d 266, 272 (D. Del. 2010); *Acxiom Corp. v. Axiom, Inc.*, 27 F. Supp. 2d 478, 506–07 (D. Del. 1998). The default judgment will therefore encompass not only the patent infringement and

**B. Injunctive Relief**

BTL argues that it is entitled to a permanent injunction. To be entitled to permanent injunctive relief, BTL must show "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damage, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). In the context of a default judgment, where the defendant does not respond and the plaintiff cannot quantify its damages, these factors generally weigh in favor of injunctive relief." *Eden Foods*, 2023 WL 2926592, at *4.

To establish irreparable harm, BTL relies almost entirely on its trademark infringement claim. *See* Dkt. No. 37 at 19–20. BTL points out that under that Act, as recently amended, a finding of a violation of the Act triggers a presumption of irreparable harm. *See* 15 U.S.C. §1116(a) ("A plaintiff seeking any such injunction shall be entitled to a rebuttable presumption of irreparable harm upon a finding of a violation identified in this subjection in the case of a motion for a permanent injunction . . . ."); *see Spark Therapeutics, Inc. v. Bluebird Bio, Inc.*, 2022 WL 605724, at *20 (D. Del. Jan. 25, 2022). Moreover, a likelihood of confusion constitutes a showing

---

trademark infringement claims, but the parallel claims under the DDTPA and Delaware common law.

BTL makes a separate argument that the court should enter default judgment on BTL's false advertising claim under the Lanham Act. The false advertising claim, however, is based entirely on the evidence that the defendants' advertising and promotions are literally false because they use BTL trademarks and data from BTL-sponsored studies to suggest that the defendants' devices are associated with BTL and its devices. In its proposed order, BTL does not request a default judgment on the false advertising claim, nor does BTL seek separate injunctive relief directed to its false advertising claim. Default judgment will therefore not be issued with respect to the false advertising claim.

of irreparable harm.  *See Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 196–97 (3d Cir. 1990).  Based on its factual allegations regarding the violation of its trademark rights, BTL has plainly established irreparable harm with respect to that cause of action.

While BTL has made a convincing showing of irreparable harm with regard to its trademark infringement claim, it has not done so with respect to its claim of patent infringement.  In particular, BTL has not pointed to evidence as to the volume of sales made of the allegedly infringing products made by the defendants.[2]  Nor has BTL argued that the alleged patent infringement has caused it irreparable injury in any other way.  For that reason, the court's injunction will not extend to prohibiting further infringement of BTL's patent rights.  Of course, if BTL is able to show irreparable harm from the defendants' patent infringement in the future, such as by showing that BTL has lost potential sales to customers who have purchased the defendants' infringing products, BTL can seek to amend the judgment to incorporate a provision extending the injunction to patent infringement.

With regard to its federal and state trademark claims, BTL has readily satisfied the other requirements for obtaining permanent injunctive relief.  First, BTL has shown that it lacks an adequate remedy at law for those violations.  BTL argues that a loss to its reputation resulting from the defendants' Lanham Act violations is the type of injury that is not quantifiable, and that remedies at law are therefore not adequate to compensate BTL for the loss of control over its

---

[2] The only evidence offered by BTL relating to the defendants' sales of infringing products is in the declaration of Josephine Kim, an attorney representing BTL in this litigation.  Ms. Kim's declaration states that BTL and its counsel have discovered that the defendants "have been selling and advertising knockoff versions" of BTL's devices, and that "[o]ver time, Juvawave has sold on its site numerous infringing devices, including: the EMSHAPE; the EMSMART; and the EMSLIM."  Dkt. No. 39, at ¶¶ 3–4.  Those assertions, however, are ambiguous.  The expressions "have been selling" and "has sold on its site numerous infringing devices" can be understood to mean that numerous infringing devices have been offered for sale on the Juvawave website, not necessarily that actual sales of those devices have been made, much less in what volume.

reputation. *See S&P Glob. Inc. v. S&P Data LLC*, 619 F. Supp. 3d 445, 472 (D. Del. 2022). Mr. Wooten's declaration notes that BTL has invested heavily in marketing its products under its registered trademarks, and that its goodwill has great (but unquantifiable) value.

The balance of hardships and the public interest also strongly favor BTL. For purposes of this motion, BTL has shown that the defendants have violated their trademark rights. There is no cognizable hardship to the defendants in prohibiting them from continuing to do so. The hardship factor falls entirely on BTL in having its rights infringed. That is particularly true in light of the defendants' refusal to engage in this litigation, which suggests that unless ordered to stop, they will continue their infringing conduct into the future. As for the public interest, there is no public interest served by trademark infringement. To the contrary, enforcement of trademark rights serves the public interest of preventing consumer confusion. *See S&P Glob.*, 619 F. Supp. 3d at 472. For these reasons, the court will enter a permanent injunction prohibiting the defendants from continuing to infringe BTL's trademark rights by using BTL's trademarks or confusingly similar marks in its marketing and advertising activities.

As an additional component of the court's injunctive order, BTL requests that the court direct the defendants to remove all infringing content from the website www.juvawave.com. Under 15 U.S.C. § 1118, a court may, upon finding a Lanham Act violation, order that "all labels, signs, prints, packages, wrappers, receptacles, and advertisements in the possession of the defendant, bearing the registered mark or . . . the work, term, name, symbol, device, combination thereof, designation, description, or representation that is the subject of the violations . . . shall be delivered up and destroyed." That provision has been interpreted, reasonably enough, to apply to the removal of infringing content from websites. *See World Ent., Inc. v. Brown*, No. 09-5365, 2011 WL 2036686 (E.D. Pa. May 20, 2011), *aff'd*, 487 F. App'x 758 (3d Cir. 2012).

That relief will be granted, and the defendants will be directed to remove all infringing content from their website, i.e., BTL's registered marks, along with confusingly similar marks, such as EMSCULPT, EMSHAPE, EMSMART, EMSLIM, EMSTRENGTH, EMSCULPT NEO, HIFEM; and HIPEM.

BTL makes the related argument that if the defendants fail to comply with the order directing them to remove all infringing content from their website, the court should direct Shopify.com, the host of the defendants' website, to take down the infringing content from the website. That step, if it needs to be taken, can be taken only after Shopify has been notified that BTL is seeking a court order to that effect and is given an opportunity to respond. The details of any such proceeding can await further developments. For now, however, no such proviso will be included in the court's injunctive decree.

### C. Monetary Relief

In addition to injunctive relief, BTL seeks a monetary award of damages for the defendants' acts of patent and trademark infringement. As noted above, while the plaintiff's allegations and evidence are generally taken as true in a default judgment proceeding, that principle does not apply to a request for damages that are not for a sum certain. *See* 10A Charles Alan Wright et al.*,* Federal Practice & Procedure § 2688.1 (2016) ("If the court determines that the defendant is in default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true."). To award damages in a default proceeding, the court must make a finding, based on evidence, not merely on the allegations in the complaint, in determining whether damages are warranted and in what amount.

In this case, BTL premises its request for damages on sales made by the defendants of the infringing products. The problem is that BTL does not offer any satisfactory evidence as to the

11

number of such sales, or even whether there have been any such sales at all.  Instead, BTL assumes that there has been at least one sale of each of two of the defendants' infringing products, and it seeks an award of damage calculated by the lost profits that BTL would have earned by making those two sales itself.

That method of calculating damages will not support an award.  In an effort to support its claim for infringement damages, BTL argues that all the requirements for proof of lost profits have been satisfied: (1) there is market demand for BTL's EMSCULPT and EMSCULPT NEO devices; there are no acceptable non-infringing alternatives; (3) BTL has sufficient manufacturing capacity to serve many more customers than it now serves; and (4) BTL would have sold at least one more EMSCULPT device and one more EMSCULPT NEO device if the defendants had not been selling their "knockoff" devices.

BTL's argument is necessarily based on the premise that the defendants have sold at least two infringing devices, and that absent the sales by the defendants, those sales would have gone to BTL.  But there is no support for that premise.  If the defendants sold no devices at all, there would be no basis from which to conclude that the defendants' conduct led to lost profits in the amount BTL is requesting.  Nor does BTL offer any other basis from which to conclude that the defendants' infringing conduct resulted in BTL losing at least two sales—one of an EMSCULPT device and one of an EMSCULPT NEO device.  Because that essential step in BTL's argument is missing, the claim for patent damages fails.

BTL makes a similar argument with regard to its claim for damages attributable to BTL's Lanham Act claims.  But that argument fails on the same ground.  As in the case of its claim for patent damages, BTL bases its claim for trademark damages on the presumed sales of one EMSCULPT device and one EMSCULT NEO device.  Because BTL has not offered evidence that

12

the defendants made any sales of their infringing devices, they cannot recover damages based on lost profits attributable to those sales.

The request that the default judgment include an award of damages is therefore denied for lack of evidence supporting such an award.

BTL's request for an award of money damages is distinct from a motion for attorney's fees that it may elect to seek under either 15 U.S.C. §1117(a) or 35 U.S.C. § 285. Any such motion must be filed within 14 days of the date of the judgment. *See* Fed. R. Civ. P. 54(d)(2)(B)(i).

### D. Willful and Malicious Behavior

In the final request in its motion, BTL asks the court to find that Mr. Vaughn's behavior in this case has been "willful and malicious." Dkt. No. 37, at 29. That request is not tied, at least in BTL's current motion, to any form of relief BTL seeks. The issue is therefore not ripe for decision, except to the extent that Mr. Vaughn's conduct has already been taking into account in earlier portions of this order, such as whether the court should enter a default judgment based in part on "culpable conduct" by the defendants. The court's finding on that issue relates to the defendant's culpable conduct in failing to appear and defend in this action, not to whether Mr. Vaughn acted willfully or maliciously in infringing BTL's patent and trademark rights. To the extent that the issue of Mr. Vaughn's conduct may bear on subsequent claims in this action, his conduct can be considered in that context at that time. Anything said on that subject at this time, unrelated to a claim being pressed by BTL at present, would be premature.

A judgment setting forth the court's decisions and directives responding to BTL's motion and request for relief will be issued in conjunction with this order. The court will retain jurisdiction over this matter for purposes of enforcing the provisions of the court's injunction and disposing of any related matters that the parties may bring to the court's attention.

IT IS SO ORDERED.

SIGNED this 6th day of February, 2024.

_____
WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE